# CASES

# SUPREME JUDICIAL COURT,

# COUNTY OF KENNEBEC,

## ARGUED MAY TERM, 1847.

---

### John Plaisted *versus* The Boston and Kennebec Steam Navigation Company.

The owners of a steamboat, being a common carrier, are liable for a shipment on board of her, lost by means of a collision with another vessel at sea, and without fault imputable to either, there being no express stipulation of any kind, between the owner of the goods and the owners of the boat, that they should be exempted from the perils of the sea.

This case came before the Court on the following report of the trial before Whitman C. J.

This was an action of assumpsit against the defendants, as common carriers.

It was admitted by the defendants that the hides described in the plaintiff's declaration, were received on board the Steamboat New England, which was in the employment of the defendants and owned by them, as common carriers, to be carried from Boston to Gardiner, for an adequate compensation; the said hides were lost on the voyage, at night, on the 28th of May, 1838, in consequence of a collision with the schooner Curlew. The collision stove a hole in the steamboat, causing her to sink, and said hides and most of the cargo sunk with her.

Plaisted *v.* Boston and Kennebec Steam Navigation Company.

If in the opinion of the Court, the defendants are liable, without proof of negligence on their part, then they are to be defaulted, and the damages are to be assessed by the Court; but if they are not liable without such proof of negligence, then the cause is to be submitted to a jury to determine whether there was any negligence on the part of the defendants.

*Wells* and *Danforth*, for the plaintiff, contended that, inasmuch as it was admitted that the goods were taken by the owners of the boat as common carriers, they were liable for their value. There are but two exceptions to be found to the liability of common carriers for the goods delivered to them,—the act of God and the acts of the public enemy. The collision of two boats does not come within the first, and it will not be pretended, that it does within the last. 8 Watts & S. 44; 1 McCord, 360; Story on Bailments, § 330, 331, 332; 2 Kent, 597 to 609; 2 Ld. Raym. 909; 1 T. R. 27; 5 T. R. 389; 1 Wils. 282; 3 Esp. N. P. Rep. 127; 6 Johns. R. 160, and 170; Abbott on Ship. 245; 11 Johns. R. 107; 10 Johns. R. 1; 2 Wend. 327; 6 Cowen, 266; 6 Wend. 335; Wright, 193; Marshall on Ins. 414; 3 Kent, 230.

*Evans*, for the defendants, contended that a loss of goods by a common carrier by sea, without fault, is a loss by perils of the sea. Story on Bailments, § 489; 2 Kent, 597. A collision is a peril of the sea. 3 Esp. R. 67; Abbott on Shipping, (last Ed.) 240 and 501, in the margin.

If there be no blame, a loss by collision is a loss by inevitable accident, and that comes within the class of cases of loss by the act of God. In such case common carriers are not liable. Story on Bailments, § 511, 512 and 514; 3 Kent, 231; *Hale* v. *Wash. Ins. Co.*, Law Rep. Sept. 1842.

And it makes no difference whether there is a bill of lading or not. 1 Con. R. 492; 12 Con. R. 410; 14 Peters, 99; Curtis' Rights and Duties of Seamen, 219.

The opinion of the Court was, after a continuance, drawn up by

WHITMAN C. J. — We are required to decide, whether the

owners of a steamboat, admitted to be a common carrier, are liable for a shipment on board of her, lost by means of a collision with another vessel at sea, and without fault imputable to either, there being no express stipulation of any kind, between the plaintiff and defendants, that they should be exempted from perils of the sea. Such a disaster must be admitted to be within the meaning of the terms *perils of the sea.* *Buller & al.* v. *Fisher & al.* 3 Esp. 67 ; Story on Bailments, § 511 and 512. And if these terms are synonymous with the terms *act of God,* in their technical sense, the case is clearly with the defendants ; for they are not responsible, if the loss was in such technical sense, the act of God. And *Mr. Justice Colcock, in Blythe's ex'rs* v. *Marsh & al.* 1 McCord, 360, remarked, that inevitable accident and perils of the sea were convertible terms, so far as they relate to the responsibility of the carrier to the owner ; and he is understood, by the counsel for the defendants, to use those terms as synonymous with the terms *act of God.* But it may be doubtful whether he so intended ; for the case before him did not present the case of a common carrier ; and he speaks only of a carrier, who was conveying a cargo from one port to another ; and, so far as appears, was engaged for the voyage, under a bill of lading stipulating to carry the cargo and deliver it, the dangers of the seas being excepted. The decision was against the carrier upon the ground of negligence.

Story, in his work (§ above cited) does not undertake to decide, whether the terms, perils of the sea, and inevitable accident, and the acts of God, are synonymous ; but says, if perils of the sea are to be so considered then the decisions upon the meaning of these words become important in a practical point of view, in all cases of maratime and water carriage. He, however, expresses a doubt whether the precise meaning of this phrase is very exactly settled. In 3 Kent's Com. 216, it is said, " perils by sea denote natural accidents, peculiar to that element, which do not happen by the intervention of man, nor are to be prevented by human prudence ; and again, on the same page, " it is a loss happening in spite of all human

effort and sagacity. And the same author, in vol. 2, p. 601, says, " the books abound with strong cases of recovery against common carriers, without any fault on their part; and we cannot but admire the steady and firm support, which the English courts of justice have uniformly and inflexibly given to the salutary rules of law on this subject, without bending to popular sympathies, or yielding to the hardships of particular cases. And, again, quoting L'd Holt, in *Coggs* v. *Barnard*, 2 L'd Raymond, 909, and other authors, he says, " this was a politic establishment, contrived by the policy of the law for the safety of all persons, the necessity of whose affairs obliged them to trust these sorts of persons ; and it was introduced to prevent the necessity of going into circumstances impossible to be unravelled. The law presumed against the common carrier, unless he could show it was done by public enemies, or such acts as could not happen by the intervention of man, as lightning and tempests." Mr. C. J. Best, in *Riley* v. *Horn*, 5 Bing. 217, says, " to give due security to property the law has added to that responsibility of a carrier, which arises immediately out of his contract to carry for a reward, namely, that of taking all reasonable care of it, *the responsibility of an insurer*. L'd Mansfield, in *Forward* v. *Pillard*, 1 Term R. 27, defines the act of God to mean " something in opposition to the act of man." Such remarks tend strongly to show, that the phrase *perils of the sea*, which are generally defined to be such accidents as ordinarily result from navigation upon that element, is not entirely coincident with what is, in many cases, understood by the act of God, excusing a common carrier from liability for losses of property under his management.

The destruction of a vessel by rats, the precaution of keeping a cat on board having been adopted, has been adjudged a peril of the sea ; yet this could hardly be deemed a loss by the act of God ; and could have no resemblance to lightning and tempests, so often named as instancing that which would exonerate a common carrier from loss. It is well settled, that a fire, not the effect of lightning, occurring at sea, is a peril of the sea. Marsh. Ins. c. 13, § 3. *Hale* v. *N. J. Steam N. Co.*

15 Conn. R. 539. Yet an accident so happening is not accounted an act of God, excusing a common carrier from responsibility. In the case of *Hahn* v. *Corbell*, 2 Bing. 205, the defendant, the carrier, was held answerable; and proof, that he was not guilty of negligence was rejected; and yet, there does not seem, in that case, to have been any good reason, why it should not have been deemed a case of inevitable accident, to a vessel navigated upon an arm of the sea, and therefore a peril of the sea, such as should have rendered an insurer against such perils, answerable for the loss. So also in the case of *Hodson* v. *Malcolm*, 5 Bos. and Pul. 336, which was an action upon a policy upon a ship, in which the loss appeared to have originated from the sudden impressment and carrying away of seamen, sent on shore to cast off a fastening made thereto, and before they could accomplish it, which occasioned her loss. This was held to be a peril of the sea; but such an act, it has been considered, would form no sufficient excuse for a common carrier. The loss originated from the act of man, and not from the act of God. *McArthur & al.* v. *Sears*, 21 Wend. 190.

In the case of *Smith* v. *Scott*, 4 Taunt. 125, presenting a case of collision between two vessels, it was held to be a loss from perils of the sea, although the plaintiff's ship was run down by the gross negligence on the part of the navigators of the other vessel. There can be no doubt that the owners of the lost ship, if she was of the class denominated common carriers, would have been answerable to the owners of property on board of her: for her loss was occasioned by the gross negligence of human agents, and not by any act of God, in the technical sense of that phrase. The language of the jurists before cited, who are certainly of very high repute, equal to any that this country or England has ever produced, is altogether inconsistent with any other meaning, than that common carriers are subjected, in the absence of stipulations to the contrary, to liabilities much beyond what falls to the lot of those who are not such. Those, who are of the latter class, are rendered responsible, under the law of bailments, for transporting

Plaisted *v.* Boston and Kennebec Steam Navigation Company.

goods for hire, for the highest degree of diligence, such as every prudent man exercises in his own concerns. This would not be sufficient to exonerate a common carrier, in all cases, from liability. He is bound not only to the highest degree of care and diligence, but as an insurer against every peril, not arising from the act of God, as tempests, storms, lightning and extraordinary convulsions of the elements, or acts of a public enemy.

In the case of *McArthur & al.* v. *Sears*, before cited, these subjects are discussed by Mr. Justice Cowen, in delivering the opinion of the Court, and the authorities elaborately, though somewhat desultorily, reviewed. In that case the plaintiffs were allowed to prevail against the defendants, as common carriers, for the loss of a shipment, undertaken to be transported across lake Erie. The loss happened without the slightest fault imputable to the navigators, and was one for which insurers might have been responsible : but it occurred as the vessel on board of which the goods were, was attempting, in the night, to make a port of safety, but failed of accomplishing it, in consequence of not seeing lights, usually seen there, and mistaking a light, casually thereabouts, which the master did see, for one which he missed of seeing. This was clearly a peril of the sea ; but did not occur from the act of God, but from human means. The case of *Amar* v. *Astor*, cited by the defendants, from the 6th of Cowen, 266, is explained, and, as generally understood, is shown, by the Judge, to be erroneous, as had before been done in the commentaries of other authors. The Judge, moreover, puts the case of a common carrier ship, sailing near a foreign coast, which, in the darkness of the night, might be lured ashore by false lights, put forth for that purpose. A disaster from thence arising would originate by the act of man, and still would be a peril of the sea, for which underwriters against those perils might be answerable ; but, if the ship were a common carrier, would not excuse her owners from responsibility for the loss of goods on board of her. And the Judge, in view of the authorities examined by him, remarks, that it is no matter what degree of prudence may be

exercised by the carrier and his servants, although the delusion by which he is baffled, or the force by which he is overcome, may be irresistable, yet, if it be the result of human means, the carrier is responsible."

The accident in the case at bar, as presented, is no more referable to the act of God, than is every event that occurs under his providence ; and the collision having had its origin from the agency of man, without any concussion from any extraordinary violence of the elements, it must, in the absence of any modification of the general rule by the previous agreement of the parties, be held that the defendants are liable for the loss of the goods shipped by the plaintiff, as set forth in his writ and declaration.                     *Defendants defaulted.*