J. H. Swanson and W. T. Swanson v. Keokuk & Western Railroad Company, Appellant.

**Setting Fire:** NEGLIGENCE: *Jury question.* Plaintiff's premises were set on fire while defendant's freight train was passing. Defendant's witnesses testified that both engines being used on that occasion were equipped with the most modern appli-

ances for arresting sparks, and that both had been inspected on leaving a station eight miles distant, and found in perfect order. It was also shown that the engineers were competent men. Plaintiff testified that on examination he found coal cinders under the right-of-way fence, the largest of which was too large to pass through the engine netting if the latter was in the condition testified to by defendant's witnesses. *Held*, that it could not be said, as matter of law, that a verdict finding defendant guilty of negligence was without support in the evidence.

ELEMENT OF DAMAGE:  *Purchase price of farm.*  In fixing the value of plaintiff's farm in an action for damages from fire set by defendant's engines, it was not error to permit plaintiff to testify as to the price paid for it.

EVIDENCE:  *Conclusions.*  There was no error in striking out the answer of a witness to the effect that the openings in the spark arresters would only allow a small spark to escape, such answer being but a conclusion.

*Same.*  It was proper to exclude testimony offered to the effect that such a hedge was a detriment to a farm.

*Competency of testimony.*  In an action for damages to plaintiff's farm by fire started by defendant's engines, the fact that the cross-examination of witnesses showed that their testimony as to the value of the farm before and after injury was based on their estimates as to the value of a hedge destroyed did not render their testimony in chief incompetent, the measure of damages for the destruction of a hedge being the difference in value of the farm before and after its destruction.

*Same.*  Where a fire alleged to have been set by defendant's engines occurred in October, 1899, and the trial of plaintiff's action for damages took place in April, 1900, it was not error to refuse to permit defendant to show the value of certain meadow alleged to have been destroyed, by comparison with the condition of the remainder of the meadow at the time of the trial, there being no showing that the latter was in substantially the same condition as when the fire occurred.

*Competency of witness.*  Where a witness testified that he had had experience with hedges, and had observed the effect of fire on them, it was error to refuse to permit him to answer the question whether fire would kill a green hedge similar to the one in question.

*Same.*  It was error to exclude such witness' testimony as to the difference in the value of the farm before and after the fire.

VOL. 116 IA—20

*Hypothetical questions.* The objection that the answer was incompetent because the question was put hypothetically, and did not show the exact conditions, was not tenable where it was based on the record as far as it went.

*Harmless exclusion.* In an action for the destruction of a hedge alleged to have been set on fire by defendant's engines error in excluding a witness' answer to a question as to the appearance of parts of the hedge after the fire as to whether it was damaged by the fire, was not prejudicial, where the witness practically covered the question before his examination was concluded.

*Harmless error—Allowing further examination on stricken matter.* Where a witness testified that the hedge burned off was dead hedge,—"been dead, I judge, a couple of years,"—and the answer was stricken out, notwithstanding which he was asked and permitted to answer how he determined that the hedge was dead, a reversal would not be granted for this alone, it being evident that counsel supposed the latter part only of the previous answer had been stricken out.

**Passion and Prejudice:** SPECIAL FINDINGS. Where there was evidence supporting special findings of the jury in answer to specific questions, a contention that such answers showed the jury to have been prejudiced was not tenable.

*Appeal from Appanoose District Court.*—HON. FRANK W. EICHELBERGER, Judge.

FRIDAY, APRIL 11, 1902.

ACTION to recover damages caused by fire. Trial to a jury, and verdict and judgment for the plaintiffs. The defendant appeals.—*Reversed.*

*Baker & Baker* for appellant.

*Vermillion & Valentine* for appellees.

SHERWIN, J.—The plaintiffs seek to recover damages caused by fire alleged to have been set by the defendant's passing train. At the time the fire started, a heavy freight train was passing over the road through the plaintiff's farm.

There is a heavy grade at the point in question, and at this time the train was handled by two engines—one at the head end and one pushing in the rear.   The defendant called witnesses who testified that both engines were equipped with the most modern and best known appliances for arresting sparks, and that both had been thoroughly inspected and found in perfect order before starting from Centerville on the trip in question, some eight miles from the place of the fire.   It was also shown that the engineers were competent men.   This testimony was uncontradicted, save by the facts and circumstances shown by the plaintiffs touching the origin and spread of the fire; and the appellant now insists that the verdict was not supported by the evidence because of this positive testimony on the part of its witnesses.   The fire started when this train was passing, and was seen by the trainmen.   The helping engine dropped back after the train had been pushed over the hill, and the men in charge thereof stopped it and made an effort to put out the fire, but without success. , The wind was blowing rather strong from the south, and the fire started on the north side of the track and ran rapidly north.   In passing the point where the fire started one or both of the engines were working hard, as indicated by the exhaust.   One of the plaintiffs testifies that he examined the premises to find where the fire started, and that he found coal cinders at the south edge of the burned grass, right under the right of way fence, and that the largest cinder found was about the size of the end of his thumb.   With this record before us, it is impossible to say, as a matter of law, that the verdict is without support in the evidence.   There is ample evidence in support of the claim that the fire was set by one of the engines, and, when this is shown the presumption arises that it was caused by the negligence of the company. In addition to this legal presumption, the jury had before it facts and circumstances tending to support the presumption.   The fact that one cinder, at least, was too large to pass through the engine

netting if in the condition testified to by the defendant's witnesses, and the fact that one or both engines were working heavily at the time, were properly for the consideration of the jury in determining whether the engines were in the condition claimed for them, and whether they were at the time properly operated under all the circumstances shown: *Greenfield v. Railway Co.,* 83 Iowa, 270.

But it is contended that the verdict is conclusively shown to be the result of prejudice because of answers given to special interrogatories asked by the defendant. In answer to those the jury found that the engines were not equipped as it was claimed they were; that they had not been inspected as stated, and found in good order; that the engines were not carefully operated at the time in question; and that the engineers were not skillful and careful at the time the fire was set out; and that the fire was set out because of lack of proper skill and care on the part of the engineers. As we understand the record, the trial court was not asked to set aside any of these special findings, and, if it had been, we do not see how it could have done so under the evidence and the peculiar construction of some of the questions. For instance, No. 4 asks if the engines were being operated by skillful and careful engineers at the time the fire was set out by the engines. By finding that the engineers were not then careful, the question could be answered in the negative, as it was. The same thought was incorporated in No. 6, and was answered in the same way. There is evidence supporting these special findings, and nothing therein indicating to our minds passion or prejudice.

II. In fixing the value of the plaintiff's farm, a witness testified as to the price paid for it. There was no error in this. It tended, at least, to show the market value.

III. The cross-examination of several witnesses called by the plaintiffs, as to the value of the farm before and after

the destruction of the hedge, developed the fact that they based their estimates on the value of the hedge. Their testimony in chief was competent, notwithstanding this testimony on cross-examination. The rule of damage for the destruction of a hedge is the difference in value of the entire farm before and after its destruction, and in determining this the value of the hedge must necessarily be taken into consideration.  *Rowe v. Railroad Co.,* 102 Iowa, 286; *Bradley v. Railway Co.,* 111 Iowa, 562.

IV.  There was no prejudicial error in striking out the answer of the witness Augustus, in which he testified that the openings in the spark arresters would allow only a small spark to escape. The latter part of the answer was purely a conclusion, and the substance of the answer, aside from that, was in evidence and before the jury.

The fire in question occurred in October, 1899, and the trial of this case took place the latter part of April, 1900. A claim is made for the destruction of several acres of meadow, and the defendant sought to show the value of that burned by comparison with the condition of the remainder of the meadow at the time of the trial, and did so by the testimony of two or three witnesses. Other witnesses were not permitted to testify in this manner because it was not shown that the old meadow was in the same condition as at the time of the fire. The comparison might have been proper if the same condition substantially was shown, but it would hardly be competent to make a comparison between a meadow destroyed by fire and one subsequently destroyed in whole or in part by action of the elements or from other causes, and, before being permitted to make any comparison between the present condition of the burned meadow and that of the old, it should have been shown that the old was in substantially the same condition as when the fire occurred. In *Little v. McGuire,* 43 Iowa, 447, it was claimed that winter wheat had been tramped and eaten off by defendant's

stock to such an extent as to cause it to "winter kill, or freeze out in the winter and spring," and it was held competent to show that other winter wheat in the neighborhood not so tramped and eaten was frozen out by the severity of the weather—a very different case from the one at bar. In *Bradley v. Railway Co.*, the meadow for which recovery was sought had been plowed up at the time of the trial, and it was held competent to show the condition of another piece adjoining it, which was burned over by the same fire, clearly showing the same condition at the time of the loss.

This question was put to one of defendant's witnesses, after showing him familiar with hedges in general: "State to the jury what the appearance of parts of that hedge were, as to whether or not it was damaged and killed by fire." It was competent to show the appearance and condition of the hedge after the fire. This was necessary to fix the damage which had been done to it. This witness, however, practically covered this question, and the one following it, before his examination was concluded, so there was no prejudicial error in excluding these answers.

Witness Logan testified that the hedge that was burned off was dead hedge; "been dead, I judge, a couple of years." This answer was stricken out. He was afterwards asked how he determined that it was dead hedge when it burned. He answered this question without objection, and from this question and the answer thereto it is evident that counsel supposed that the latter part only of the previous answer had been stricken out. We should not reverse on this ruling alone, in view of the record as a whole.

Logan testified that he had had experience with hedges, and had observed the effect of fire on them, but was not permitted to answer whether a fire would kill a green hedge similar to the one described in this case. This was error. All jurors cannot be supposed to know the effect of fire on growing Osage orange hedges, and it was proper to show this by one experienced in that line. The

claim that it was incompetent because the question was put hypothetically and did not show exact conditions is not sound. It was based upon the record, so far as it went, and that was sufficient.   Other testimony of a similar character was ruled out, which rulings are for the same reason erroneous.

Logan's testimony as to the difference in value of the farm before and after the fire should have been received.

There was no error in refusing the testimony offered that such a hedge was a detriment to a farm.   The measure of damage in a case of this kind is well settled, and while witnesses may differ as to the value of a hedge to a farm, and in fixing this value will to a greater or less extent express their own individual opinions from the situation as found, still, because some may think a hedge detrimental, it does not follow that it will render its market value less.

We cannot leave this case without mildly chiding the appellant's counsel for the condition of the abstracts.   The original of 43 pages is amended with another of 33 pages, which is followed by a supplement and a separate book for the assignment of errors.   The annoyance of going to four different books for the appellant's record is at once apparent, and seems hardly excusable.

For the errors pointed out, the judgment is REVERSED. *Reversed.*