ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, *Plaintiff in Error,* v. P. H. SANDLIN, *Defendant in Error.*

## Opinion filed April 13, 1918.

1. There was no reversible error in sustaining a demurrer to a plea to a declaration where another plea, setting up the same matter of defence, was thereafter filed and the case was tried upon the issue made by such plea.

2. The owner of personal property, which he has recently pur- chased, who is familiar with its cost price may testify as to the value of such property, since the cost of a thing is some. evidence of its market value.

3. Where a cause is heard by a Referee, upon a motion for a finding for the defendant at the close of the evidence for the plaintiff, the Referee is governed practically by the same rules that are applicable in a case of a demurrer to evidence or upon a motion for a directed verdict.

4. Where a Referee to whom a case is referred for trial hears the witnesses and sees them as they testify, his findings of fact are entitled to the same weight as the verdict of a jury.

5. At common law common carriers are held to a very strict accountability for the loss and failure to deliver goods received by them for carriage. Such accountability is not founded on contract but is imposed by law upon grounds of public policy for the protection of the shipper and, in the absence of a binding contract otherwise fixing liability, a common carrier is, with certain exceptions, liable as an insurer to a shipper for losses of or injuries to goods being transported by such carrier.

6. In the absence of a valid contract on the subject the relation of a carrier is not changed to that of warehouseman with respect to a shipment of goods transported by it until such shipment has reached its destination and notice thereof has been given the consignee and he has been afforded reasonable time thereafter in which to receive and remove such goods or reject them.

7. By the Carmack Amendment to the Interstate Commerce Act (Act of June 29, 1906, C 3591, Sec. 7, 34 Stat. at Large, 584, 595), Congress has relieved carriers of interstate shipments from the liability of insurers, as it was at common law, and the liability imposed on such a carrier is limited, by this statute, to any loss, injury or damage caused by it, or by a succeeding carrier to whom the property may be delivered for carriage, and in such a case the loss alleged must be attributable to some breach of duty or default on the part of the carrier.

8. The specific effect of the Carmack Amendment was to supercede the special regulations and policies of particular States upon the subject of the carrier's liability to shippers for loss or damage to interstate shipments and the contracts of carriers with respect thereto.

Writ of Error to Circuit Court for Hamilton County, Cary A. Hardee, Referee.

Judgment reversed.

*John L. Doggett* and *Russell L. Frink,* for Plaintiff in Error.

*S. S. Sandford,* for Defendant in Error.

WEST, J.—This cause was by agreement of counsel for the respective parties referred to a Referee with power to hear and determine the same, and he was by order of reference directed to make separate findings as to the law and the facts involved in said cause.

The first count of plaintiff's declaration upon which there was a finding by the Referee in favor of the plaintiff is as follows:

"P. H. Sandlin, by his attorney, S. S. Sandford, sues The Atlantic Coast Line Railroad Company, a corporation legally authorized to transact business in the State of Florida which said Company· has a duly authorized agent resident in Hamilton County, Florida, for that on October the 1st, A. D. 1911, the said defendant accepted for carriage and undertook to deliver a certain shipment of goods purchased by this plaintiff from Studebaker Harness Company, to the amount of One Hundred and Thirty one Dollars and Forty Five Cents ($131.45) which said shipment was accepted by said defendant from its connecting carriers from South Bend Indiana; and said defendant company did transport over its line of road said shipment of goods to Jasper, Florida, for plaintiff and although plaintiff has demanded delivery of said goods yet defendant has failed and refused to deliver said goods to the damage of this plaintiff in the sum of Five Hundred Dollars."

To the declaration the defendant filed pleas of (1) not guilty (2) that it never promised as alleged (3) "that it was provided, in and by the bill of lading under

which the alleged shipment was accepted by this defendant for transportation, that this defendant should not, except in case of negligence, be liable for loss or damage to the alleged shipment by fire, and this defendant says that, while the alleged shipment was in its possession, to-wit, in its depot and warehouse at Jasper, Florida, the same was destroyed by a fire which destroyed this defendant's warehouse at said place; that said fire took place and consumed said warehouse and said shipment without the negligence of this defendant," and (4) "that the alleged shipment was accepted and transported under and by virtue of the terms of a bill of lading issued at the point of shipment to the consignor, for the plaintiff, wherein and whereby it was provided that, after the lapse of forty-eight (48) hours, exclusive of legal holidays, after notice of the arrival of the property at destination duly sent or given to the consignee, the liability of this defendant should be that of warehouseman only.   And the defendant further says that, upon the arrival of the alleged shipment at destination, notice was duly sent, by mail, to the plaintiff consignee; that, after the lapse of more than forty-eight (48) hours after the sending of such notice, the alleged shipment was destroyed by fire, without the negligence of this defendant, while stored in its depot or warehouse at the alleged destination, by reason whereof this defendant is not liable."

Demurrers to the two latter pleas were sustained by the Referee after which amended pleas were filed setting up the same matters of defense in somewhat more elaborate form.

Later the defendant filed an additional plea in which it was averred in substance that the said shipment composed of several items which were enumerated, was

received by it at its station at Jasper; that a few days after its receipt defendant's agent personally notified plaintiff that said shipment was then in said depot and pointed it out to him; that four or five days thereafter said shipment was destroyed by a fire which consumed defendant's depot without the negligence of this defendant by reason whereof the defendant is not liable.

Upon the issues thus made a trial was had before the Referee resulting in the following finding:

"Whereupon the undersigned as Referee having considered the testimony submitted in the light of the pleadings therein doth find:

"1st. That the plaintiff upon the first count of the amended declaration is entitled to a verdict in the sum · of $131.45, together with interest at the legal rate of 8 per cent from the date of the filing of the praecipe for summons ad respondendum, to-wit December 21st, 1911.

"2nd. It is further determined that the plaintiff is not entitled to a judgment on the 2nd count of its declaration wherein damages claimed by the plaintiff for the non-delivery to him of a shipment of galvanized corrugated iron.

"As a matter of law controlling the decision in this cause the referee is of the opinion:

"1st. That the testimony shows that the defendant, as to the corrugated iron referred to in 2nd count of the declaration, held the same as a warehouseman and not as an insurer. The testimony fails to discover any negligence on the part of the defendant which would render them liable as a warehouseman. Besides recovery is not sought on this theory as shown by the terms of the 2nd count of the said declaration.

"2nd. The referee is of the opinion that the defend-

ant company is liable as an insurer in so far as the goods mentioned in the first count of the declaration are concerned. The defendant company did not by its testimony overcome the burden cast upon them by section 2847 General Statutes of Florida, and until, by a preponderance of evidence, the company has shown the giving of written notice to the shipper they are liable as common carriers."

Upon this finding final judgment was duly entered. To review this judgment this writ of error was taken.

A number of errors are assigned but counsel for plaintiff in error in their brief group them under a few headings and discuss the propositions which they regard as controlling. We shall consider the questions argued by counsel.

It is insisted in the first place that the demurrer to the original third plea to the declaration was erroneously sustained by the Referee. This plea is set out in the foregoing statement. It may be that the Referee erred in sustaining the demurrer to it but, as we have seen, after this demurrer was sustained amended pleas were filed, setting up in somewhat more elaborate form, the same matters of defense and the defendant, in so far as the pleadings are concerned had all the advantage and benefits to be derived from such defense. He therefore suffered no injury as a result of the alleged error of the Referee. This being true, it is clear that this contention is not well founded. Florida R. Co. v. Battle, 62 Fla. 181, 56 South. Rep. 690; Atlantic Coast Line R. Co. v. Coachman, 59 Fla. 130, 52 South. Rep. 377; Gainesville & G. R. Co. v. Peck, 55 Fla. 402, 46 South. Rep. 1019.

It is also urged that the Referee erred in allowing the plaintiff Sandlin to testify as a witness for himself

as to the value of the harness sued for in the first count of his declaration. He had testified that he had ordered the harness sued for to be sent to him, that he did not know at the time of its destruction that it had arrived at Jasper, but that on the morning after it was destroyed by fire the agent of the defendant told him that "this shipment of harness" had reached Jasper before the fire and was destroyed by the fire. The witness was then asked what was the value of this harness. This question was objected to on various grounds, but the objections were overruled and the witness answered the question stating the value of the harness.

The various parts and parcels of the shipment of harness are specifically set out in the bill of particulars attached to the declaration from which it appears that the plaintiff had purchased the harness from parties named therein. Having just purchased it he necessarily knew the original cost price and alleges it in his declaration. It has been held that the cost of a thing is some evidence of its value (Terre Haute & Ind. R. R. Co. v. Smith, 65 Ill. App. 101); that ordinarily the owner of personal property is presumed to have such familiarity with it as to know pretty nearly, if not actually, what it is worth (Shea v. Hudson, 165 Mass. 43, 42 N. E. Rep. 114; Reed v. New, 35 Kan. 727, 12 Pac. Rep. 139); that evidence of the actual price that land brings upon a sale is relevant upon the question of its market value (Wolff v. Meyer, 75 N. J. L. 181, 66 Atl. Rep. 959); that evidence of the price obtained for land at an administrator's sale is admissible upon the question of the value of the land (March v. Portsmouth & Concord R. R., 19 N. H. 372); that in determining the value of the plant of a water company evidence of the actual construction cost thereof, with proper allow-

ances for depreciation, is competent (Kennebec Water Dist. v Waterville, 97 Me. 185, 54 Atl. Rep. 6); that in fixing the value of plaintiff's farm in an action for damages from fire set out by defendant's engines it was not error to permit plaintiff to testify as to the price paid for it, since such testimony at least tended to show the market value of the farm (Swanson v. Keokuk & W. R. Co., 116 Iowa 304, 89 N. W. Rep. 1088); and that proof of the cost of an article is admissible as a circumstance in an inquiry held to ascertain its value. Southern Ry. Co. v. Williams, 113 Ga. 335, 38 S. E. Rep. 744. In the latter case the court said: "In ascertaining the amount which the plaintiffs would respectively be entitled to recover if the evidence supported a verdict in their favor, the cash value of the property destroyed at the time of the burning was to be determined. While the amount that the property cost them when purchased was not the absolute, and possibly not an approximate, criterion of this value, yet it was one element and circumstance in relation to value which could properly go to the jury to be considered with the other evidence in determining value. Presumably what an article cost at the time of its purchase was its value; likewise evidence would be admissible to show in this connection that a party paid more than its value for it. Again, it might be shown that since its purchase it had deteriorated in value for many causes."

In the case of Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manuf'g. Co., 27 Fla. 1, 9 South. Rep. 661, this court held that the original market cost of property is an element of proof proper to be submitted to a jury to aid them in ascertaining its value.

There was no reversible error in this ruling of the Referee.

At the close of the testimony for complainant counsel for the defendant moved that the Referee find in favor of the defendant and the order of the Referee in denying this motion as to the first count of plaintiff's declaration is assigned as error.

This motion presented to the referee practically the same question that is presented to a court upon a motion to direct a verdict or upon a demurrer to the evidence. The rule in such cases is that the party presenting the motion or demurrer admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. Gunn v. City of Jacksonville, 67 Fla. 40, 64 South. Rep. 435.

While the evidence was meager, there was evidence before the Referee at the time this motion was made upon which a finding or the plaintiff upon the first count of the declaration could have been legally upheld and it was therefore not reversible error to deny the motion for a finding for the defendant on this count.

The contention is also made that the relationship of the defendant to the plaintiff at the time of the alleged failure to deliver said shipment and its destruction by fire had changed from that of carrier to warehouseman, in which case its liability would be different. This depends upon a question of fact, which may be stated as follows: was notice of the receipt of said shipment by the defendant at its depot in Jasper given to the plaintiff and was he thereafter afforded reasonable time to receive and remove it before its destruction, or in case the shipment was transported under a contract evidenced by a bill of lading in the form recommended by the Interstate Commerce Commission, was he afforded forty-eight hours exclusive of legal holidays to receive

and remove it after notice of its arrival had been duly given him? Moore on Carriers (2nd ed.) Vol. 1, p. 383 *et seq;* In the Matter of Bills of Lading, No. 787, 14 I. C. C. Rep. 346; Cleveland, C. C. & St. L. R. Co. v. Dettlebach, 239 U. S. 588, 36 Sup. Ct. Rep. 177; Southern R. Co. v. Prescott, 240 U. S. 632, 36 Sup. Ct. Rep. 469. Upon this question there was sharp conflict in the testimony. The agent of the defendant testified that notice of the arrival of said goods was duly given plaintiff but the receipt of such notice or knowledge of the arrival of the shipment was denied by the plaintiff. The Referee decided the question in favor of the plaintiff. His finding upon questions of fact is entitled to the same weight as the verdict of a jury. McLeod v. Citizens' Bank of Live Oak, 61 Fla. 343, 56 South. Rep. 190; Croom v. Ocala Plumbing & Electric Co., 62 Fla. 460, 57 South. Rep. 243.

The important question in this case, as we view it, is presented by assignments predicated upon the holding of the Referee to the effect that the defendant carrier was liable as an insurer in so far as the goods described in the first count of the declaration are concerned. There is no inconsistency in holding the defendant liable as a carrier as to this count and as a warehouseman as to the second count because as to the latter it was shown that the plaintiff had knowledge, before their destruction by fire, of the receipt of the goods at their destination and had failed to remove them whereas, as to the former, as we have seen, any such knowledge was expressly denied by him.

At common law common carrier are held to a very strict accountability for the loss and failure to deliver goods received by them for carriage. Such accountability is not founded upon contract but is imposed

by law upon grounds of public policy for the protection of the shipper. With certain exceptions, not necessary to be stated here, and in the absence of a valid, binding contract, common carriers at common law are liable as insurers to shippers for loss of goods being carried by them, and this is the rule in this State. Seaboard Air Line Ry. v. Mullin, 70 Fla. 450, 70 South. Rep. 467; Atlantic Coast Line R. Co. v. Coachman, 59 Fla. 130, 52 South. Rep. 377; Sun merlin v. Seaboard Air Line Ry., 56 Fla. 687, 47 South. Rep. 557; Clyde Steamship Co. v. Burrows, 36 Fla. 121, 18 South. Rep. 349.

The contention however is made that the shipment here involved was accepted by the defendant for transportation under the provisions of a bill of lading exhonerating it from liability for the loss of said goods on account of fire, except in case of negligence, and that the fire which consumed its warehouse and destroyed said shipment of goods was not due to its negligence after arrival there.

The bill of lading which is in the form recommended by the Interstate Commerce Commission (In the Matter of Bill of Lading, No. 787, 14 I. C. C. Rep. 346), was offered in evidence and upon objections being interposed to its admission by counsel for plaintiff was excluded. No. assignment of error is predicated upon this ruling, but in the brief of counsel for the plaintiff it is conceded that this bill of lading was received by the plaintiff and turned over to the defendant and the original bill of lading was by order of the Referee, upon agreement of counsel, transmitted to this court as part of the record. Furthermore it appears from the allegations of the declaration that the shipment, the value of which is sought to be recovered in this action, was an interstate ship-

ment, in which case it was subject to the paramount regulations of the Federal Congress. Fornel v. Florida East Coast R. Co., 65 Fla. 102, 61 South. Rep. 194; Seaboard Air Line Ry. v. Mullin, supra; Aultman v. Atlantic Coast Line R. Co., 71 Fla. 276, 71 South. Rep. 283.

The Federal Statute on the subject is the Amendment of Section 20 of the Interstate Commerce Act, known as the Carmack Amendment (Act of June 29th, 1906, C. 3591, Section 7, 34 Stat. At Large, 584, 595) the pertinent portion of which is as follows: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose lines such property may pass, and no contract, receipt, rule or regulation shall exempt such carrier, railroad, or transportation company from the liability hereby imposed; *Provided,* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage or injury shall have been sustained, the amount of such loss, damage or injury, as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

In construing this statute with respect to the measure of liability imposed by it upon a carrier of an interstate

shipment the Supreme Court of the United States in the case of Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. Rep. 148, speaking through Mr. Justice Lurton, said: "What is the liability imposed upon the carrier? ·It is a liability to any holder of the bill of ·lading which the primary carrier is required to issue 'for any loss, damage or injury to such property caused by it,' or by any connecting carrier to whom the goods are delivered. The suggestion that an absolute liability exists for every loss, damage or injury, from any and every cause, would be to make such a carrier an absolute insurer· and liable for the unavoidable loss or damage though due to uncontrollable forces. That this was the intent of Congress is not conceivable. To· give such emphasis to the words, 'any loss or damage,' would be to ignore the qualifying words, 'caused by it.' The liability thus imposed is limited to 'any loss, injury or damage caused by it or a succeeding carrier to whom the property may be delivered,' and plainly implies a liability for some default in its common law duties as a common carrier."

.It appears therefore that under the statute the loss alleged must be attributable to some breach of duty or default on the part of the carrier and that as to interstate transportation of freight the rule at common law holding the carrier liable as an insurer is abrogated by this statute. Missouri, O. & G. Ry. Co. v. Franch, Okla.     , 152 Pac. Rep. 591.

In the case of International Watch Co. v. Delaware L. & W. R. Co., 80 N. J. L. 553, 78 Atl. Rep. 49, the Supreme Court of New Jersey in considering a case in which the application of this statute arose held that "where no bill of lading is given, the shipper himself stands in the same position as if he was the lawful

holder of such bill of lading, and the liability of the company to such shippers is the same liability as is imposed in favor of the lawful holder of a receipt or bill of lading.' See also Bowden v. Philadelphia, B. & W. R. Co., 28 Del. (5 Boyce) 146, 91 Atl. Rep. 209; Standard Combed Thread Co. v. Penn. R. Co. 88 N. J. L. 257, 95 Atl. 1002; Aultman v. Atlantic Coast Line R. Co., *supra*.

In a series of recent cases the Supreme Court of the United States has held that the specific effect of the Carmack Amend . ent was to supersede "the special regulations and policies of particular States upon the subject of the carrier's liability for loss or damage to interstate shipments and the contracts of carriers with respect thereto." New York, P. & N. R. Co. v. Peninsular Produce Exch. of Maryland, 240 U. S. 34, 36 Sup. Ct. Rep. 230; Charleston & W C. R. Co. v. Barnville Furniture Co., 237 U. S. 597, 35 Sup. Ct. Rep. 715: Boston & M. R. R. v. Hooker, 233 U. S. 97, 34 Sup. Ct. Rep. 526; Great Northern R. Co. v. O'Connor, 232 U. S. 508, 34 Sup. Ct. Rep. 380; Missouri, Ky. & T. R. Co. v. Harriman, 227 U. S. 657, 33 Sup. Ct. Rep. 397; Kansas City Southern R. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. Rep. 391; Adams Express Co. v. Croninger, *supra*.

Many state courts hold to a like effect and necessarily so since this is a subject the regulation of which was by the constitution delegated to the Congress of the United States. W. H. Mitchell & Co. v Atlantic Coast Line R. Co., 15 Ga. App. 797, 84 S. E. Rep. 227; Michelson v. Judson Freight Forwarding Co., 268 Ill. 546, 109 N. E. Rep. 281; Missouri, O. & G. Ry. Co. v. French, Okla. , 152 Pac. Rep. 591; Joseph v. Chicago, B. & Q. R. Co., 175 Mo. App. 18, 157, S. W. Rep. 837; Olivit Bros. v. Pennsylvania R. Co., 88 N. J. L. 241, 96 Atl.

Rep. 582; Cook v. Northern Pac. R. Co., 32 N. D. 240, 155 N. W. Rep. 867; Spence v. Southern R. Co., 101 S. C. 426, 85 S. E. Rep. 1058.

It being conceded that the shipment here involved is interstate it is clear that the measure of the defendant's liability in this case is a Federal question to be determined under the provisions of the Federal Statutes as interpreted by the Supreme Court of the United States.

The judgment will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.