the court. The plaintiff moved that not only Alfred H. Hoadley, on whose behalf the terms of sale were signed, but also the appellants herein, should be directed to pay the balance of the amount bid, on the theory that the successive bids were part of a scheme to delay the plaintiff in the collection of its debt, and that Fanne Curtis Hoadley, in whose name the property had four times been bid in, and Ralph P. Buell, who as attorney in fact had three times signed the terms of sale for the purchaser, as well as Joseph H. Hoadley, who had directed that these bids be made, should all be held liable for the completion of the purchase.

It does not appear that the plaintiff before this last sale had taken any steps to compel the completion of the purchase by any of the bidders, and some sixty per cent. of the amount of its mortgage debt had been paid in by reason of these various deposits before the last sale occurred. That sum has been directed to be paid over to the plaintiff on account of its debts. It appears that there is such a person as Alfred H. Hoadley, and there is an affidavit that he is a man of property and substance. He has not appealed from the orders in question, and there is nothing to show that he will not comply with the direction of the court that he complete the purchase. He has not repudiated the act of his attorney in fact in bidding in the said property for him, nor in any way disavowed the transaction. If the purchaser should fail to complete his purchase, and the plaintiff sustains any damage by reason thereof, and is able to show that there was a conspiracy to interfere with judicial process and render the various sales ineffective, it has a remedy which is not affected by the denial of its present motion.

The orders appealed from will therefore be modified, by striking out the provisions that the three appellants pay in the amount bid at the last sale, less the deposit, and complete the purchase of said property, and the motion as to them denied, thus leaving Alfred H. Hoadley alone directed to complete the purchase. In view of the course of proceedings of the appellants, however, such modification will be without costs.

Settle orders on notice. All concur.

---

A. C. CHENEY PIANO ACTION CO. v. NEW YORK CENT. & H. R. R. CO. (No. 9/31.)

(Supreme Court, Appellate Division, Third Department. March 18, 1915.)

1. COMMERCE ☞8—INTERSTATE SHIPMENT—STATE LAWS.

In an action against a common carrier for loss of an interstate shipment, the federal statutes and federal decisions control, although state courts have jurisdiction to administer federal law in such actions.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ☞8.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. CARRIERS ☞30—CARRIAGE OF GOODS—INTERSTATE COMMERCE ACT—BILLS OF LADING.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 1, 24 Stat. 379, as amended (U. S. Comp. St. 1913, §§ 8563–8604), all common carriers must establish just and reasonable classifications of property for transportation, and just and reasonable regulations affecting rates and tariffs and the forms and substance of bills of lading.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig. ☞30.]

3. CARRIERS ☞159—CARRIAGE OF GOODS—BILLS OF LADING—WAIVER OF STIPULATION.

The use of the uniform bill of lading by a carrier, under recommendation of the Interstate Commerce Commission, containing a stipulation limiting the time for filing claims against a road for loss of shipments to 4 months, does not preclude the carrier from waiving such a stipulation of the bill.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 668–671, 699–703½, 711–714, 718, 718½; Dec. Dig. ☞159.]

4. CARRIERS ☞177—CARRIAGE OF GOODS—LIABILITY OF INITIAL CARRIER.

By federal law a carrier of goods, accepting an interstate shipment for transportation over its own line and others, is liable for loss of or damage to the goods, though carried beyond its own line, and the burden of proof to show that the loss resulted from some cause for which the initial carrier was not responsible is upon the carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 775–789, 791–803; Dec. Dig. ☞177.]

5. CARRIERS ☞159—CARRIAGE OF GOODS—STIPULATION IN BILL OF LADING—WAIVER.

Where a common carrier of goods accepted an interstate shipment for transportation under a bill of lading stipulating that claims for loss must be filed within four months, and where such carrier wrote to the shipper after disappearance of goods in such terms as to recognize its claim as valid and subsisting, although no formal demand had been filed, there was an implied waiver by the carrier of the stipulation limiting time for filing such claim.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 668–671, 699–703½, 711–714, 718, 718½; Dec. Dig. ☞159.]

Appeal from Trial Term, Rensselaer County.

Action by the A. C. Cheney Piano Action Company against the New York Central & Hudson River Railroad Company. Judgment for plaintiff (85 Misc. Rep. 157, 148 N. Y. Supp. 108) and defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Visscher, Whalen & Austin, of Albany (Wm. L. Visscher, of Albany, of counsel), for appellant.

Countryman, Nellis & Dubois, of Albany (Pierre E. Dubois, of Albany, of counsel), for respondent.

LYON, J. This is an appeal from a judgment rendered against the defendant for the value of certain piano actions delivered by the plaintiff to the defendant at Castleton, N. Y., on January 24 and 31, 1910, for carriage to Richmond, Ind. The articles were lost after delivery at Muncie, Ind., to the last connecting carrier, the Chicago, Cincinnati

& Louisville Railroad Company, which was then being operated by a receiver appointed by the United States Circuit Court of Indiana in 1909. The bill of lading issued to the plaintiff upon receipt of the goods provided that:

"Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after the delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time to make delivery has elapsed. Unless claims are so made, the carrier shall not be liable."

The average time within which to make delivery of such shipments was 15 or 16 days. The first communication in writing from the plaintiff to the defendant regarding failure to make delivery of the piano actions was made to defendant's freight agent at Castleton, July 11, 1910, which was 5 months after reasonable time to make delivery of the first shipment had elapsed, and nearly that as to the second shipment. The communication was as follows:

"Please have the following tracers put through and return to us at your earliest convenience. We have once before asked you to trace these shipments, and as our customer claims that they have not received the three cases of actions, we are anxious to show that delivery was made. * * *

"Yours very truly,                    Cheney Piano Action Company."

Tracers:

" * * * Trace and show delivery of case of action No. 94 shipped January 24, 1910.

" * * * Trace and show delivery of case of actions Nos. 96, 97, shipped January 31, 1910."

On July 16, 1910, the division freight agent of the defendant wrote to the plaintiffs:

"I beg to acknowledge receipt of your letter of July 14th regarding deliveries in Chicago. I have to-day taken the matter up with our Chicago people, to see what we can do to effect the delivery required. * * *"

On August 3, 1910, the defendant's division freight agent wrote the plaintiff:

"I beg to acknowledge receipt of your letter of August 2d, regarding two cases of actions shipped by you on January 24th and 30th, last, consigned to the Starr Piano Company, Richmond, Ind., which you state have not yet arrived at destination. It would seem that, if these shipments have not yet been received at destination, they must have been lost in transit, and my suggestion is that you duplicate the shipment and enter claim against our road.        Yours truly."

On August 4, 1910, plaintiff wrote defendant's division freight agent as follows:

"Replying to your favor of August 3d, file C, in reference to the two cases of actions shipped to the Starr Piano Company, Richmond, Ind., which have not been received or paid for, would say that we will act upon your suggestion and are sending to-day to R. L. Calkins, F. C. A., invoice to cover the three cases. We thank you for your prompt attention to this matter."

The tracers of July 11th were forwarded by the defendant to the Chicago, Cincinnati & Louisville Railroad Company, but no delivery was reported by that company, or by the receiver thereof; and the plaintiff, having been informed by the defendant of that fact, pre-

sented to defendant's freight claim agent by letter of August 4, 1910, a formal claim as follows:

"Inclosed please find invoice covering three cases of piano actions consigned to the Starr Piano Company, Richmond, Ind., which they have not received and we have not been able to get a tracer back. We feel that it is no more than fair that this claim should be immediately allowed. We have sent three or four tracers after the shipments, but have not received them back, so undoubtedly the shipments were lost in transit. Your prompt attention to this matter will be appreciated."

Upon receipt of this letter of August 4th, proof was obtained by defendant from the intermediate carriers of delivery to the Chicago, Cincinnati & Louisville Railroad Company, and the auditor of that company was thereupon advised of that fact, and asked to establish delivery to the consignee or to authorize payment of the claim. The auditor replied that the time for presenting the claim to that company expired September 8, 1910, and that, although his company could not establish delivery, it declined to pay the claim because it had not been presented within the required time. It was conceded upon the trial that the Chicago, Cincinnati & Louisville Railroad was sold, and that the order confirming the sale provided that creditors having claims against the receivership should have the right within 60 days after notice of the sale to present their claims, and that the purchasers should take subject to the same, provided the court decreed such claims, a lien prior to that of the bondholders. It was also conceded that the time to present proof of claim expired September 6, 1910, and that the receiver made his final report March 31, 1911.

On August 10, 1910, the defendant's freight claim agent wrote the plaintiff:

"In order to properly investigate and promptly adjust this claim, it will be necessary for us to have the additional documents indicated by the 'X' mark below, which kindly attach hereto and return. Upon receipt, the claim will have our immediate attention. * * *"

On August 22, 1910, the plaintiff wrote the defendant's freight claim agent:

"Further in reference to our favor of August 4th, we are inclosing the original invoice and original bill of lading of shipments consigned to the Starr Piano Company, Richmond, Ind., January 24, 1910, and January 31, 1910, amount $146.75 and $293.50. Kindly favor us with a check to cover these invoices, as our customers claim that they have never received these shipments."

On August 23, 1910, defendant's freight claim agent wrote the plaintiffs, acknowledging receipt of plaintiff's letter of August 4th, saying that the claim had been forwarded to the freight claim agent, Central Railway Clearing House, Buffalo, N. Y., "with request that its adjustment be arranged with you direct."

On October 7, 1910, a freight claim agent of defendant wrote plaintiff:

"Returning your tracer, with reference to your claim for $440.25, our P–215292. As the claim is now with F. D. Hogdson at Chicago, we are not in position to give you exact status. If you have occasion to trace us again, please quote the above number."

On July 5, 1911, defendant's division freight agent wrote the plaintiff:

"In connection with conversation our Mr. Parker had with you about the middle of last month concerning your claim for loss of piano actions, shipped to the Starr Piano Company, Richmond, Ind., which were lost on the line of the C., C., C. & L., now known as the Chesapeake & Ohio Railroad of Indiana, I take pleasure in advising that we have succeeded in getting our legal department to give this matter reconsideration, and I am now advised by our general attorney that he is willing to have this claim adjusted on its merits. All papers have therefore been sent to our freight claim agent, Mr. R. L. Calkins, and I trust settlement will be made in the near future."

On July 17, 1911, plaintiff wrote defendant's division freight agent:

"Kindly inform us what steps are being taken in reference to our claim P–215292 for piano actions shipped to Starr Piano Company. In your last letter to us in reference to this matter, we understood that the claim had been passed and that we were to receive payment for the same."

On July 19, 1911, the division freight agent of defendant wrote plaintiff:

"I am in receipt of your letter of July 17th regarding your claim P–215292, account of piano actions shipped to the Starr Piano Company. I have taken this matter up with the freight claim agent, to ascertain why this claim has not been paid, and will do everything possible to rush the matter to a conclusion."

On August 5, 1911, the division freight agent of defendant wrote plaintiff:

"I beg to advise that the papers in this claim are still in the hands of our legal department, as they desire to take it up with the legal department of the C., C., C. & L. or C. & O. of Indiana, to see if we can obtain settlement with that road. I hope to be able to advise you within a short time."

On November 16, 1911, a freight claim agent of defendant wrote the plaintiff:

"As explained by Mr. Parker, the road responsible for nondelivery of these shipments went into the hands of a receiver, and the court set a time for the presentation of all claims, upon the expiration of which the receiver was discharged, and, as we understand it, no further claims accruing prior to or during the receivership can be paid. These shipments were made in January and the claim not filed until August, 1910. The delay in presenting the claim to us prevented us from filing it with the receiver in accordance with the order of the court, consequently we are not in a position to recover from the line at fault the value of the goods. You are doubtless familiar with the third paragraph of section 3 of the bill of lading contract reading: 'Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point or origin within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable.' It is most unfortunate that in this instance the presentation of the claim should have been delayed, but as we are innocent parties we do not feel that under the circumstances we should be expected to entertain the claim. Bills of lading submitted in support of the claim are returned. We do not find that freight bill was sent us."

On November 28, 1911, this action was commenced. The complaint after alleging the shipping of the piano actions and the failure of the carrier to deliver them to the consignee, alleges that the defendant, by its acts and repeated correspondence, promises of tracing, etc., misled

the plaintiff and prevented and persuaded it from filing any formal claim, until finally defendant itself requested plaintiff to present its claim for adjustment, which plaintiff thereupon did; and the plaintiff alleges that by reason of these facts the defendant has waived strict compliance on the part of the plaintiff as to the bringing or presenting of any formal claim within the four-months period, and is estopped and precluded from insisting thereon.

The answer, so far as it relates to the issue of waiver, simply denies the allegations of the complaint, and alleges the requirements of the bill of lading as to the presentation of a claim in writing within the four-months period; that the claim was not presented within such period, and that, owing to the failure of the plaintiff to so present the same, the defendant was unable to present a claim to the receiver of the railroad upon which the loss occurred, within the time required by the order of the court, and will be unable to obtain reimbursement from such rail-road or its successor for any amount paid in settlement of the claim. The case was submitted to the trial justice upon an agreed statement of facts. He made, in addition to the findings embodied in the statement of facts, the single finding that the defendant had waived any defense it may or might have had arising from, growing out of, or based upon the four-months clause or provision in the bill of lading. The only two matters to be considered upon this appeal are whether (1) there could be a waiver by the defendant of the four-months clause; and, if so, (2) whether the evidence is sufficient to establish such waiver. First, the plaintiff contends that the defendant's claim that it had no power to waive the short statute of limitations, being the highly technical defense of ultra vires, is not available as a defense unless pleaded, and the plaintiff calls attention to the fact that there is no allegation in the answer that the defendant, by reason of any statute, rule, or otherwise, was deprived of the power of waiving noncompliance with this clause.

[1, 2] The shipment having been one of interstate commerce, the federal statutes and federal decisions are controlling, although the state courts have jurisdiction to determine actions relative thereto based upon the United States statutes. There is no provision of the Interstate Commerce Act prescribing the forms of bills of lading, or providing for a limitation of time within which such claims may be presented, or relating to a waiver of the presentation thereof. By the Interstate Commerce Act it was made the duty of all common carriers to establish just and reasonable classifications of property for transportation, and just and reasonable regulations affecting rates and tariffs and the forms and substance of bills of lading.

Pursuant to such provisions of the act, and for the purpose of promoting uniformity as to the substance and form of bills of lading, the carriers operating generally in Official and Western Classification territories, after numerous conferences with shippers and the Interstate Commerce Commission, agreed upon what was designated as the "Uniform Bill of Lading," which upon final submission to the Commission was, in a report announced June 27, 1908, recommended by it for use among all carriers. In re Bills of Lading, 14 Interst. Com. Com'n R. 346.

"In that report it was indicated that the Commission would not at that time undertake to order the carriers to use this form of bill of lading, and it was made clear that the recommendation thereof was to be understood as subject to such modification or change as might be found necessary, either by experience or upon further investigation. The form and contents of the bill of lading thus agreed upon by shippers and carriers, and recommended by the Commission, was adopted by most of the carriers in the territories mentioned, and its provisions embodied in their freight classifications which were published and filed with the Commission, thus becoming a part of their established tariff schedules.

"Among these provisions was the following (section 3, paragraph 3): 'Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable.' It has been disclosed, by investigation and otherwise, that during much of the period since these provisions became part of the tariff schedules of said carriers the provision above quoted has to a greater or less extent been disregarded by most or all of them, for various causes.

"The representatives of carriers and shippers alike, appearing in a general proceeding of inquiry respecting the matter of bills of lading now pending before the Commission, have joined in a request for the Commission's approval of a waiver by the carriers of the above provision, limiting the time within which claims of the character referred to might be presented to the carriers, with respect to all such claims presented prior to December 1, 1913, that were not presented within the four-months period, and also all claims accruing within 2 years prior to the date of this report which have not been presented to the carriers, provided such claims are presented to the carriers on or before April 1, 1914. It is urged that a waiver of this four-months limitation provision to the extent indicated is the only course that will prevent or cure the discrimination otherwise resulting. This is evidently true.

"The Commission cannot regard the excuses offered as entire justification for the course pursued. When it becomes apparent to carriers that they cannot, ought not, or will not enforce the provisions contained in their established tariffs, whether in regard to matters of the kind here involved, demurrage, reconsignment, or other like practices, as well as to rates, they should change their tariffs in the manner prescribed by law so that their practices may be in conformity thereto. The Commission has not the authority under the law to order them to disregard their tariffs, nor does it feel justified in acquiescing in the adjustment of matters brought into the condition here presented by reason of disregard of tariff provisions, except from the necessity of a situation like this, when to do otherwise must leave uncorrected grossly unjust and widespread discriminations.

"For the reasons indicated, we cannot feel otherwise than that, for the purpose of preventing such results, the carriers should deal with all claims of this character within the dates herein specified upon their merits, without discrimination with respect to this rule regarding the period of time within which they should have been presented. It is expected that this will be done in good faith, and that hereafter, in order to avoid discriminations of the kind here presented, the tariff provisions of carriers respecting this question will be rigidly adhered to. The Commission does not here express any opinion with respect to the reasonableness of the period of limitation contained in this provision, that being a matter for determination in connection with the proceeding of general inquiry above referred to."

Interstate Commerce Commission No. 4844, Matter of Bills of Lading, decided February 9, 1914, 29 Interst. Com. Com'n R. 417.

The plaintiff claims that it thus appears that making the waiver in question would have been justified, and was entirely within the power and authority of the common carriers, adopting the bill of lading, of which carriers the defendant was one.

[3] Incorporating into the Interstate Commerce Act the common-law obligation resting upon the carrier to make all its charges reasonable and just, and directing the Commission to execute and enforce the provisions of the act, does not by implication carry to the Commission or invest it with power to exercise the legislative function of pre-scribing rates which shall control in the future, especially in view of the fact that the statute expressly recognizes the right of the carrier to establish, increase, or reduce rates on the condition of publishing them and filing them with the Commission. Interstate Commerce Commis-sion v. Cincinnati, N. O. & T. P. R. R. Co., 167 U. S. 479, 17 Sup. Ct. 896, 42 L. Ed. 243.

[4, 5] Second. As to whether the evidence is sufficient to constitute a waiver of the four-months clause of limitation, assuming that the de-fendant had the power to make a waiver, we have been referred to no federal decision upon the subject, and know of none. However, under the decisions of the courts of our state, the question of waiver, based upon failure to make seasonable objections, must be regarded as settled.

From the foregoing correspondence, it appears that after the expira-tion of the four-months period the defendant, not only without objection entertained the claim of the plaintiff for the value of the lost articles, but itself suggested in its letter to plaintiff of August 3, 1910, that the plaintiff enter a claim against the defendant, which it did formally the following day, and that for more than 15 months thereafter it corre-sponded with plaintiff regarding the claim, even going to the extent, July 5, 1911, of writing plaintiff that defendant was "willing to have this claim adjusted on the merits," and "trust settlement will be made in the near future," and July 19, 1911, that the matter had been taken up by defendant's division freight agent, "to ascertain why this claim has not been paid, and will do everything possible to rush the matter to a conclusion." It was not until November 16, 1911, that defendant took the position that the claim, not having been filed within four months, could not for that reason be entertained.

It was held in the case of Titus v. Glens Falls Ins. Co., 81 N. Y. 410, that where a defendant with knowledge of the alleged invalidity of the instrument does acts based thereon, or requires the other party by vir-tue thereof to do some act or incur some trouble or expense, the for-feiture is as matter of law waived, and such waiver need not be based upon a new agreement or estoppel.

"While express waiver rests upon intention, and estoppel upon misleading conduct, implied waiver may rest upon either, for it exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances, or when there is no such intention in fact, but the conduct of the insurer has misled the insured into acting on a reasonable belief that the company has waived some provision in the policy." Kiernan v. Duchess Co. M. Ins. Co., 150 N. Y. 190, 195, 44 N. E. 698, 699.

"As already said, the doctrine of waiver is to relieve against forfeiture; it requires no consideration for a waiver, nor any prejudice or injury to the other party." Clark v. West, 193 N. Y. 349, 86 N. E. 1.

In the case of Jennings v. Grand Trunk R. R. Co., 52 Hun, 227, 5 N. Y. Supp. 140, affirmed 127 N. Y. 438, 28 N. E. 394, it was held that the defendant had waived the requirements in a bill of lading that no claim for damages should be allowed unless notice in writing be given

within 36 hours after the delivery of the goods. In that case the notice had not been given until after the expiration of the 36 hours, but the defendant in a letter to the plaintiff had placed its freedom from liability solely upon the ground of a labor strike. Many other decisions of the courts of our state to the same effect might be cited.

Concededly the defendant, as the initial carrier, is liable to the plaintiff for the loss of the property by any carrier over whose line the property may have passed, unless exempted by this clause of limitation in the bill of lading. Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 386, § 20, amended by Act June 29, 1906, c. 3591, § 7, 34 Stat. 584, 595 (U. S. Comp. St. 1913, § 8592); Atlantic Coast Line v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7.

The connecting carriers are to be treated as the agents of the initial carrier for the purposes of transportation and delivery, and the case as though the point of destination were on its own line, operated in different states. The goods not having been delivered, the presumption attaches that they were lost through the negligence of the initial carrier or its agents, and the burden of proof that the loss resulted from some cause for which the initial carrier was not responsible was thrown upon the carrier. Galveston, H. & S. A. Ry. Co. v. Wallace, 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516.

The statement of the defendant in its letter of November 16, 1911, "The delay in presenting the claim to us prevented us from filing it with the receiver in accordance with the order of the court, consequently we are not in a position to recover from the line at fault the value of the goods," is contrary to the fact. As before stated, the claim was mailed by the plaintiff to the defendant August 4, 1910, in accordance with defendant's written request to plaintiff of date of August 3d; hence the plaintiff had fully one month, or until September 6th, to file the claim with the receiver under the order of the United States court.

The merits of the action are with the plaintiff, and the judgment should be affirmed.

Judgment unanimously affirmed, with costs. All concur.