OLIVIT BROTHERS, A CORPORATION, PLAINTIFF AND RESPONDENT, v. THE PENNSYLVANIA RAILROAD COMPANY, DEFENDANT AND APPELLANT.

Submitted July 6, 1915—Decided January 28, 1916.

1. Since the passage by congress of the Carmack amendment (section 20 of the Interstate Commerce act, as amended June 29th, 1906, 34 *U. S. Stat. at L., pp.* 593, 595, ¶ 7), all questions of a common carrier's liability for loss or damage to interstate shipments are to be determined thereunder, and by the rules declared by the federal courts, this legislation having superseded all regulations and policies of a particular state upon the subject.
2. A stipulation in a bill of lading, in a case of interstate shipment, that if claim for damages be not made in writing within ten days after delivery of the property the carrier shall not be liable, is valid in the absence of any contention that the time limit is unreasonable, and the acceptance by the shipper of a bill of lading containing such provision constitutes a binding contract on his part, and, if made with the initial carrier, enures to the benefit of the connecting carrier.
3. Since the Interstate Commerce act prohibits the giving of preferences by means of consent judgments or the waivers of defences open to the carrier, where the bill of lading in case of interstate shipment contained a condition that "if claims for damage be not made within ten days after the delivery of the property the carrier shall not be liable," the liability of the carrier cannot be predicated upon the mere fact that the carrier rejected the claim for other reasons when it was presented out of time.

4. In a case of interstate shipment of watermelons, it is erroneous to refuse to charge "that the defendant was not bound to carry or transport the watermelons by any particular train, nor within any particular time, nor in time for any particular market, nor otherwise than with reasonable dispatch with reference to other business of the defendant as its general business permitted," when it appears that such request embodied the exact language of the bill of lading constituting the special contract of the parties.

On appeal from the Supreme Court.

For the appellant, *Vredenburgh, Wall & Carey.*

For the respondent, *Queen & Stout.*

The opinion of the court was delivered by

TRENCHARD, J.   This action (known as the thirteen count case) was brought to recover damages for deterioration in condition of thirteen carloads of watermelons consigned from points in North Carolina to the plaintiff in Jersey City; the deterioration being averred to have resulted from unnecessary delay in transportation.

The defendant company received each of these carloads in good condition from an intermediate carrier at Edgemoor, Delaware, and within a reasonable time after shipment by the initial carriers, the delay occurring after delivery to the defendant company.

The jury, at the Hudson Circuit, found for the plaintiff and the defendant appeals from the consequent judgment.

We are of the opinion that the judgment must be reversed for reasons we will now state.

We think there was error in the refusal of the learned trial judge to direct a verdict for the defendant company with respect to the claim for loss of certain of the carloads of melons and also in his charge to the jury respecting them.

Each of the initial carriers of these carloads of melons executed and delivered to the plaintiff or its representative a bill of lading therefor, pursuant to the Carmack amendment (sec-

tion 20 of the Interstate Commerce act, as amended June 29th, 1906, 34 *U. S. Stat. at L., pp.* 593, 595, ¶ 7).

Twelve of these bills of lading contained a condition that "claims for loss or damage shall be made in writing to the agent at point of delivery promptly after arrival of the property, and if delayed for more than ten days after the delivery of the property, or after due time for the delivery thereof, no carrier hereunder shall be liable in any event." The other bill of lading contained a like provision excepting that the limitation therein was four months.

It appeared beyond dispute at the trial that no claim, as required by the bills of lading, was made for loss or damage respecting the twelve carloads within ten days after the delivery of the property to the plaintiff, and that fact was made the basis of a motion to direct a verdict as to those twelve carloads.

The trial judge denied such motion and instructed the jury, on this phase of the case, that they might find for the plaintiff if they found that the defendant company had waived that condition of the bills of lading.

Appropriate exceptions to such refusal and instruction raise the question whether it was open to the jury to find a waiver of such conditions.

We are constrained to think it was not.

Since the passage by congress of the Carmack amendment, all questions of a common carrier's liability for loss or damage to interstate shipments are to be determined thereunder, and by the rules declared by the federal courts, this legislation having superseded all regulations and policies of a particular state upon the subject. *Spada* v. *Pennsylvania Railroad Co.*, 86 *N. J. L.* 187; *Missouri, Kansas and Texas Railway Co.* v. *Harriman,* 227 *U. S.* 657; *Adams Express Co.* v. *Croninger,* 226 *U. S.* 491.

We have also held in this court that a provision in a bill of lading that in case of loss or damage occurring to property consigned to a common carrier, before delivery, claim for such loss or damage shall be made in writing within ten days after delivery, is valid in cases of interstate shipments, and

the acceptance by the shipper of the bill of lading containing such provision, constitutes a binding contract on his part, and if made with the initial carrier, enures to the benefit of the connecting carrier. *Spada* v. *Pennsylvania Railroad Co., supra.*

Moreover, the validity of the limitation of time within which the shipper shall make his claim against the carrier for loss or damage to the goods shipped occurring before delivery thereof to the consignee, is established by the decision in *Southern Express Co.* v. *Caldwell,* 88 U. S. 264, where it was held that an agreement between the shipper and the carrier that the latter should not be liable for failure to deliver the goods received by it for transportation unless a claim shall be made by the shipper within a specified period, if that period be a reasonable one, is not against the policy of the law and is valid; and by the later decision in *Missouri, Kansas and Texas Railway Co.* v. *Harriman, supra,* where it was decided that a provision in a bill of lading, limiting the time within which suit may be brought for loss or damage to the property transported by the carrier, is not objectionable, provided the time limit be a reasonable one, and that "there is nothing in the policy of the Carmack amendment that is violated thereby."

Since in the present case it is not contended that the time limit for filing claims is an unreasonable one, we conclude that the condition of the twelve bills of lading is valid and constitutes a binding contract on the part of the plaintiff.

By the failure of the plaintiff to make claim within the time limit the rights of the parties became fixed. It is not contended that there was an express waiver at any time. The sole contention must be and is that there was a constructive waiver *after* the expiration of the time limit, because it appears that before the time limit expired the defendant company said and did nothing. The only evidence from which this alleged waiver is said to be implied is the mere fact that the defendant company wrote to the plaintiff that the claim was rejected upon other grounds, after it had been presented out of time.

Now we think that the liability of the defendant company cannot be predicated upon that ground. As we have pointed out, by virtue of the Carmack amendment congress has taken possession of the subject of the liability of a common carrier for the loss or damage to an interstate transportation and such questions are to be determined under the rules as declared by the federal courts.

If, therefore, the federal courts have announced a rule which is logically determinative of the question under consideration we should follow it, though it be contrary to the decisions of state courts upon the same topic of which *Merchants, &c., Transportation Co. v. Eichberg,* 109 *Md.* 211; 71 *Atl. Rep.* 993, is an example.

Now in *Phillips Co. v. Grand Trunk Railway,* 236 *U. S.* 662, a recent case, one of the questions before the United States Supreme Court was whether the carrier could waive a statute of limitations relative to the filing of claims with the Interstate Commerce Commission. Mr. Justice Lamar, speaking for the court, said: *"The obligation of the carrier* to adhere to the legal rate, to refund only what is permitted by law, and *to treat all shippers alike would have made it illegal for the carriers, either by silence or by express waiver, to preserve to the Phillips company a right of action which the statute required should be asserted within a fixed period.* To have one period of limitation where the complaint is filed before the commission and the varying periods of limitation of the different states, where a suit was brought in a court of competent jurisdiction; or *to permit a railroad company to plead the statute of limitations as against some and to waive it as against others would be to prefer some and to discriminate against others in violation of the terms of the Commerce act which forbids all devices by which such result may be accomplished. The prohibitions of the statute against unjust discrimination relate* not only to inequality of charges and inequality of facilities, but also *to the giving of preferences by means of consent judgments or the waiver of defences open to the carrier.* The railroad company therefore was bound to claim the benefit of the statute here," &c.

That reasoning seems to be controlling in the case at bar. True that case dealt with the waiver of a limitation provided for by statute, and here the limitation arises out of the contract, but in either case the liability was at an end. The point is that the Interstate Commerce act prohibits the "giving of preferences by means of consent judgments or the waivers of defences open to the carrier." Certainly this defence was "open to the carrier." That to permit such waiver would open the door to preferences is demonstrated by the mere statement of the proposition and is illustrated by the series of cases before the court at this term. The question whether by conduct misleading the shipper prior to the expiration of the time limit for filing claims the carrier might estop itself from such defence it is not necessary now to determine.

We conclude, therefore, that liability of the defendant company cannot be predicated upon the mere fact that it rejected the claims for other reasons when they were presented out of time.

We are also of the opinion that there was error in the refusal to charge the ninth request.

These twelve bills of lading contained a stipulation as follows:

"In consideration of the rate at which the freight is taken for carriage, and the special service to be performed, it is agreed by and between the carriers and the shipper, as owner or agent for owner, that the said freight is not to be carried and delivered for or with reference to any particular market or market hour at destination, nor in any special time, but only with such reasonable dispatch with reference to other business of the carrier as the general business permits."

The defendant company requested the trial judge to charge as follows: "That the defendant was not bound to carry or transport the watermelons by any particular train, nor within any particular time, nor in time for any particular market, nor otherwise than with reasonable dispatch with reference to other business of the defendant as its general business permitted."

JUNE TERM, 1915. 247

88 *N. J. L.* Olivit Bros. v. Penna. R. R. Co.

Manifestly this request should have been charged because it embodied the unobjectionable special contract between the parties with reference to the subject-matter covered by it.

Since claim was made in time respecting one of the carloads of melons, a retrial is necessary, and we remark that we have examined all the other reasons for reversal and find no merit in them.

But for the reasons stated the judgment below will be reversed and a *venire de novo* awarded.

BERGEN, J. (dissenting). I do not agree with the majority of the court, that the stipulations in the different bills of lading which require that a claim for loss be made to the carrier by the shipper within a limited time, is a contract which, under the circumstances present in these cases, cannot be waived.

The majority opinion is made applicable to three other suits by the same plaintiff against the same defendant, and also to two other suits, one by Andrew Spada, and the other by Charles Albrecht, against the same defendant. The cases were all tried together. The record shows that the initial carriers were, the Seaboard Air Line Railway Co., and the Atlantic Coast Line Railroad Co., and that the bills of lading contained different limitations as to the time within which a claim for loss must be presented, some being ten days, others being thirty days, and still others four months, and in each of the cases there are bills of lading containing different limitations.

It is admitted, that claims for loss were made in each case within four months but subsequent to the shorter periods of limitation, and as to these, the trial court submitted to the jury the question whether the defendant had waived the right to insist upon the required notice in view of the facts, among others, that the defendant had actual notice at the time of the loss, received the claims without protest, and refused to pay only upon the ground, that it was not responsible for the delay in delivery, which was the cause of the loss. In the Albrecht and Spada cases, written notice was given within

ten days that the shipments would not be received because the condition of the melons was such that a sufficient amount could not be realized to pay freight charges. Thus it appears that the defendant had immediate knowledge of the loss and refused to pay not upon the ground that the claim had not been filed within the stipulated time, but upon the ground that it was not liable for the loss occasioned by the delay in delivery.

In *Peninsula Produce Exchange of Maryland* v. *N. Y. P. & N. R. Co. (Maryland Court of Appeals)*, 89 *Atl. Rep.* 437, the claim was made after the four months' period had expired, and it appearing that the defendant had been able to make all the investigation it considered necessary upon the question of liability, but refused the claim upon another ground, namely, that the shipment had been delivered in due time, the court held, "but if it be assumed that the claim was not transmitted until after the four months' period had expired, it is clear that this limitation could be waived, and the defendant's conduct as shown by the record may be regarded as having had that effect." In the present cases, the effect of the defendant's conduct upon the question of waiver was submitted to the jury. I assume, therefore, that the finding of the jury establishes the waiver, and that the question was properly submitted to them unless under the federal statutes relating to interstate commerce, no such waiver can be made as to interstate shipments, and that it cannot is the principal basis of the opinion of the majority of the court. All of these bills of lading contain a condition that claims for loss or damage shall be made in writing to the agent at point of delivery promptly after the arrival of the property, and if delayed for more, in some of them ten days, others thirty days, and still others four months, after the delivery of the property, or after due time for delivery thereof, no carrier thereunder should be liable in any event. They each contain another condition, which is, that the initial carrier in issuing the bill of lading through to destination, when such destination is on or over connecting lines, acts only as agent and assumes no liability as principal as to the carriage of said

JUNE TERM, 1915.          249

88 *N. J. L.*          Olivit Bros. v. Penna. R. R. Co.

freight beyond its own lines; that the liability of the initial carrier shall terminate upon delivery thereof in good order within reasonable time to the next succeeding carrier and "in case of loss or damage liability therefor shall be attached to only that carrier in whose custody the said freight was at the time of said loss or damage."

There was also another condition, namely, that the "bill of lading is signed for the different carriers who may engage in the transportation, severally but not jointly, each to be bound by, and have the benefits of the provisions thereof," and also that the owner and consignee is bound by all of its stipulations, exceptions and conditions. If this suit was against the initial carrier, the condition restricting its liability to losses happening on its own line, would be no defence because under the federal statute commonly called the Carmack amendment, the carrier which issues the bill of lading is made liable for all loss although occurring on the lines of a connecting carrier, but this does not prevent a recovery from the carrier causing the loss, and the owner is still entitled to its action against any one of subsequent carriers through whose negligence the loss occurred. The plaintiff in this suit has proceeded directly against the carrier in whose possession the shipments were when the injury was caused because of its negligence. It is conceded that the defendant is entitled to the benefit of the conditions contained in the bills of lading, but this right rests upon the express or implied agency of the initial carrier to make such a contract for it. The defendant in this case received from the lines of different connecting railroads, from substantially the same locality, at the same rate of charge, shipments which were governed by different contracts discriminatory in character, without reason shown for such discrimination, and undertook to transport the freight to the designated point, and the claim is, that it must enforce these varying contracts and cannot waive this unjust discrimination; that is, its different agents may make different contracts between shippers and may favor a large shipper by allowing him four months within which to make a claim of loss, and restricting one whose

business is smaller, to ten days, and that the federal statute prevents the correction of this discrimination by waiving the shorter terms and putting each shipper on the same basis by giving all the equal benefit of the maximum term. These contracts were all adopted by the defendant as its contracts when it received the different shipments with knowledge that a preference was given to one which was withheld from the other, and are quite contrary to the theory of the interstate commerce law, if not to its express terms, which prohibits all unjust discriminations, and if it is to be held that these contracts when once made have the force of law and cannot be abated under the federal statute, then I think they are void for want of uniformity, because when this defendant ratified the act of its agents by adopting these contracts, they became to all intent and purpose the contracts of this defendant. At the time these bills were delivered in August, 1912, the interstate commerce commission had no power to regulate their form, for as was said in *A. C. Cheney P. A. Co. v. New York Central Railroad Co.,* 152 *N. Y. Supp.* 285, "there is no provision of the Interstate Commerce act prescribing the forms of bills of lading or providing for a limitation of time within which claims may be presented, or relating to a waiver of the presentation thereof." The interstate commerce commission did recommend a bill of lading which contained, among other conditions, a uniform period within which all such claims should be made, but that recommendation was not enforceable and had not been adopted by the initial interstate carriers concerned in these causes. So that all such conditions rest upon a contract between parties and are enforceable under the common law if reasonable and not operating to excuse negligence. In my opinion the fact that these divers bills of lading were issued by different initial carriers each using its own particular form, is of no consequence in the present case, for when the defendant accepted the contracts made for it by its several agents, it became responsible for the acts of each agent, and when ratified by it, became its act the same as if it had originally issued them, otherwise it could have no benefit from the

limitation, and it is in the position of a carrier who made different contracts of limitations with different shippers, discriminatory in character, without any choice of a lower rate being afforded the shipper for the different limitations, so far as appears by this record, for the rates charged were in fact the same in the different classes. It seems to me that it is in contravention of the federal statute to permit a common carrier to make a regulation requiring one shipper to make a claim within ten days, and allowing another four months under similar conditions, and that having done this, is prevented from waiving the enforcement of this unjust discrimination. It is not a waiver of a uniform regulation established by law applicable to all shippers so that thereby one would obtain an undue advantage if excepted from its terms, but a waiver of a regulation giving one an advantage over another, the effect of the waiver being to put all shippers on the same level. If these contracts have the force of law and are irrevocable, it would in my judgment be contrary to the spirit of the federal act to permit a great trunk line, like the defendant with many connecting lines of railroad as feeders, to allow such connecting lines to act as its agent in making different contracts of limitations with different shippers to the great prejudice of some, thereby discriminating between them and then when all of the shipments had been gathered together and come under defendant's control, to forbid it to correct the wrong by waiving the discriminations by granting to all the most favorable terms accorded to any. But if it be conceded that the defendant is entitled to the benefit of each of these contracts without regard to their preferential effect upon different shippers, still I think such a stipulation or condition may be waived. In *St. Louis, S. W. R. R. Co. v. Grayson,* 115 *S. W. Rep.* 933, it was held, that as a stipulation of this character is for the protection of the railroad company, it may be waived, and the same was held in the following cases: *M. & M. Transportation Co. v. Eichberg (Maryland Court of Appeals),* 71 *Atl. Rep.* 993; *Peninsula Produce Exchange v. New York, &c., Railroad*

*Co., supra.* Other cases in different states to the like effect
may be found. In *Missouri, Kansas and Texas Railway Co.*
v. *Harriman, supra,* where the suit was against the initial
carrier which issued the bill of lading containing a stipu-
lation that no suit should be brought after the lapse of
ninety days, it was held that all state statutes relating to
limitations concerning the bringing of an action have been
superseded by federal legislation, and that the construc-
tion of any stipulation which involved the validity of a
limitation upon the liability, is a federal question to be de-
termined under the common law, and that the liability im-
posed by the federal statute is the liability imposed by the
common law upon a common carrier and may be limited or
qualified by a special contract, provided the limitation be
just and reasonable. There is no claim that congress had
undertaken to regulate the conditions of limitation, or to
impose them upon the common carrier when these actions
were brought, and apparently a common carrier was at
liberty to contract for any limitation which the common
law supported, and such contracts would have the common
law qualities, one of them being, that they are subject to
waiver. That congress had not, at the time these causes of
action arose, dealt with the question relating to stipulations
concerning a claim for loss, is, I think, manifested by the
fact that by an act approved March 4th, 1915, congress first
undertook to regulate this matter by making it unlawful for
any common carrier by rule, contract, regulation or otherwise
to stipulate for a shorter period for giving notice of claims
for loss than ninety days, and for the filing of claims for a
shorter period than four months, and for the institution of
suits two years. Nor do I think the case of *Phillips* v. *Grand
Trunk Railroad Co.,* 236 *U. S.* 602, establishes a different
rule. The court in that case was dealing with the right to
waive a statute, which of course, I concede cannot be done,
but my opinion is that the expression "or the waiver of de-
fences open to the carrier," was intended to mean such de-
fences as are conferred by statute, or the common law, and

not a defence rested upon a contract the terms of which depended upon an agreement with a shipper and not upon a uniform agreement treating all alike. In these cases the Atlantic Coast Line Co. issued to one shipper a bill of lading limited to ten days for claim of loss, and to another a bill with four months' limitation; in both cases the consignee is the same and is allowed to recover for one shipper and denied it as to the other, because it is said the shorter limitation cannot be waived in favor of equality. Clearly it could not have been intended in the case last cited to adjudge that a common carrier could make unlawful contracts by discriminating between shippers and be forbidden to waive it as to those not favored, for in such case the contracts are discriminatory and unlawful and would not be a defence open to the carrier.

Nor do I agree with the conclusion reached with reference to the refusal of the trial court to charge as requested, "that the defendant was not bound to carry or transport the watermelons by any particular train, nor within any particular time, nor in time for any particular market, nor otherwise than with reasonable dispatch with reference to other business of the defendants as its general business permitted." The trial court charged, in substance, all but the following clause, "with reference to other business of the defendant as its general business permitted." This clause the trial court refused upon the ground that there may have been a lack of dispatch, and a lack of reasonable care with respect to the other business, and therefore the lack of care in management of its general business would have been attributable to the case of the particular shipment. I am inclined to think that the trial court was correct because if the delay was occasioned by negligence in the conduct of its other business to the extent that it interfered with the delivery with reasonable dispatch of the plaintiff's goods, it would be a contract which relieved it from the consequences of its own negligence.

For these reasons I think the judgment in each of these cases should be affirmed.

*For affirmance*—BERGEN, WHITE, JJ.   2.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, VREDEN-BURGH, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, JJ. 13.